UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AUDREY W. R.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:24-CV-05707-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his evaluation of certain medical opinion evidence. Had the ALJ properly considered this evidence, Plaintiff's residual functional capacity ("RFC") may have included additional limitations. The error is, therefore, not harmless, and this matter is

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this order.

## I. Factual and Procedural History

Plaintiff filed claims for DIB and SSI in August and September 2017, alleging disability beginning on December 10, 2015. Dkt. 8, Administrative Record ("AR") 221–35. Her applications were denied at the initial level and on reconsideration. AR 80–81, 105–06. She requested a hearing before an ALJ, which took place on April 23, 2019. AR 30–79, 169–71. At the hearing, Plaintiff amended her alleged disability onset date to July 13, 2016, through counsel. AR 37. On July 25, 2019, the ALJ issued an unfavorable decision denying benefits. AR 10–29. The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to this Court. AR 1–6, 218–20, 1071–73. The Court concluded the ALJ erred in his consideration of medical opinion evidence and remanded the claim for further proceedings. AR 1074–82. The Appeals Council remanded the case to an ALJ in accordance with the Court's order. AR 1086–90.

Another hearing took place on November 28, 2023. AR 999–1044. On April 25, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. AR 974–98. Plaintiff again appealed to this Court. *See* Dkts. 1, 6.

## II. Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010

(9th Cir. 2014). Additionally, "harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

## III. Discussion

Plaintiff argues the ALJ erred in evaluating certain medical opinion evidence and Plaintiff's testimony about the severity of her symptoms. Dkt. 10 at 1. She contends the proper remedy for these errors is remand for an award of benefits. *Id.* Plaintiff also argues the ALJ failed to resolve inconsistencies between limitations in the RFC and the requirements for jobs identified by the vocational expert. *Id.* at 2. If this is the only error, Plaintiff states the proper remedy would be remand for further proceedings. *Id.*

### A. *Medical Opinion Evidence*

Plaintiff contends the ALJ erred in evaluating medical opinion evidence from Alysa A. Ruddell, Ph.D., and William R. Wilkinson, Ed.D. Dkt. 10 at 8. When evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s). . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Instead, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's applications were filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

The two most important factors affecting an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). An opinion is more "supportable," and thus more persuasive, when the source provides more relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Plaintiff first argues the ALJ erred in considering the medical opinions of Dr. Alysa Ruddell. Dkt. 10 at 8. Dr. Ruddell performed a psychological evaluation of Plaintiff on August 22, 2017, on behalf of the Washington State Department of Social and Health Services ("DSHS"). AR 374. Dr. Ruddell interviewed Plaintiff and reviewed "DSHS notes dated 8/18/17 to 8/8/17 [sic]." *Id.* Based on the records and interview, Dr. Ruddell found moderate limitations in Plaintiff's ability to learn new tasks, perform routine tasks without special supervision, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, communicate and perform effectively in a work setting,

maintain appropriate behavior in a work setting, and set realistic goals and plan independently. AR 376. She found marked limitations in Plaintiff's ability to adapt to changes in a routine work setting and complete a normal workday and work week without interruptions from psychologically based symptoms. *Id.* In the mental status examination, Dr. Ruddell indicated depressed mood, paranoia, and impaired recent memory and executive functioning. AR 377. In her notes following these findings, Dr. Ruddell described the features of Plaintiff's paranoia and wrote Plaintiff "endorsed trauma" but her "[s]ymptom report did not meet clinical criteria for [post traumatic stress disorder] today." *Id.* Plaintiff also "endorsed suicidal ideation" but "related no plan or intent." *Id.* In a memory test, Plaintiff recalled two of three words in five minutes. *Id.*

Dr. Ruddell performed a second evaluation on July 10, 2018. AR 468. She again interviewed Plaintiff and reviewed her previous evaluation, the after-visit summary from Plaintiff's recent voluntary psych admission dated July 6, 2018, and DSHS notes dated July 9, 2018. *Id.* Dr. Ruddell noted symptoms of marked anxiety and depression and moderate insomnia and problems with social relationships. AR 469. She listed a diagnosis of bipolar disorder, writing: "Observed/endorsed [symptoms]: She reports episodes of mania and depression with psychiatric hospital admissions. The most recent hospitalization was 7/2018." *Id.*

Based on Plaintiff's interview and records, Dr. Ruddell opined Plaintiff would be moderately limited in her ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; perform routine tasks without special supervision; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; ask simple questions or request assistance; communicate and perform effectively in a work setting; and maintain appropriate behavior in a work setting. AR 470. She

found marked limitations in Plaintiff's ability to adapt to changes in a routine work setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. *Id.*

In the mental status exam, Dr. Ruddell noted paranoia and impaired serial threes, executive functioning, and problem solving. AR 471. In her notes, Dr. Ruddell wrote Plaintiff's paranoia consisted of feeling like everyone was mad at her, like she was a disappointment, and like no one likes her. *Id.* Plaintiff "lost track of direction" and "interrupted digits forward" during memory testing. *Id.* Dr. Ruddell wrote Plaintiff's "[a]ttention to detail may be an issue," noting she did not sign and date a form and made a common error when completing serial threes. *Id.* Regarding "practical problem solving," Dr. Ruddell noted that, when asked what she would do if the smoke alarm went off while she was at home, Plaintiff responded, "Call my Mom. . . . Look around. Have a panic attack." *Id.*

The ALJ found Dr. Ruddell's opinions "mostly persuasive." AR 989. He wrote that Dr. Ruddell's opined "mild to moderate limits, to the extent that they are consistent with the residual functional capacity found in this decision, are consistent with the medical evidence of record, as discussed above in evaluating the DDS opinion." *Id.* However, the ALJ found Dr. Ruddell's opined marked limitations not persuasive for multiple reasons: (1) the evaluations were completed by checking boxes and "contain[ed] no mention of objective findings in support of" the marked limitations, (2) the evaluations were largely based on Plaintiff's self-reported symptoms and complaints, (3) the marked limitations were inconsistent with some normal findings from Dr. Ruddell's exam, (4) DSHS uses different rules and regulations to establish disability, and (5) the marked limitations were inconsistent with the longitudinal record. *Id.*

Some of these reasons—that the evaluations included a check-box form, that the evaluations were largely based on Plaintiff's self-reported symptoms and complaints, and that DSHS uses different rules to establish disability—applied equally to the limitations that the ALJ accepted as well as to those he rejected. The ALJ gave no explanation as to why these reasons affected the persuasiveness of Dr. Ruddell's opined marked limitations but not her opined mild to moderate limitations. In the absence of such explanation, the Court cannot conclude these reasons are supported by substantial evidence. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Regarding the supportability of Dr. Ruddell's opinions, the ALJ wrote the evaluations "contain[ed] no mention of objective findings in support of the degree of limitation described" and Dr. Ruddell's "own exam mention[ed] depressed mood, reported paranoid thought, and difficulty with executive functioning and recalling words after a delay, but otherwise normal observations and performance." AR 989. Dr. Ruddell's evaluations included the results of the clinical interviews and mental status evaluations she performed on Plaintiff, both of which are "objective measures." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report as well as on the clinician's observations of the patient. But such is the nature of psychiatry."). Further, the ALJ acknowledged the abnormal findings from Dr. Ruddell's examinations but provided no explanation for why he found the normal findings more persuasive than the abnormal findings. Although the ALJ is responsible for resolving conflicts in the evidence, he must explain his

reasoning to allow for this Court's review. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Without such explanation, the Court cannot conclude the ALJ's reasoning is supported by substantial evidence.

Finally, the ALJ found Dr. Ruddell's opined marked limitations were inconsistent with the longitudinal record. AR 989. The ALJ wrote the record showed "improvement and generally stable mental status while in treatment." *Id.* He again acknowledged some mixed findings throughout the record:

> Despite varied mood, and at times tangential thought, rapid speech, passive suicidal ideation, or difficulty with memory and concentration tasks at times, she often had normal observations on mental status examination, such as appropriate rapport, appearance, affect, and thought content/process; orientation to 4 spheres; coherent speech; no suicidal ideation; normal/calm psychomotor activity; and good insight, judgment, and memory.

*Id.* (internal citations omitted).

Although the ALJ is correct that the medical records contain a mix of normal and abnormal findings, the characterization that the record showed a trend of improvement in Plaintiff's symptoms over time is not supported by substantial evidence. Rather, these mixed findings appear simultaneously at various points in time. For example, the ALJ cites to mental status exam findings from August 14, 2023, in support of his finding that Plaintiff "often had normal observations on mental status examination." AR 989 (citing AR 1323). At that appointment, the provider noted Plaintiff's appearance was neat and appropriate; her speech had normal rate, tone, and volume; her thought content and perceptual process were coherent, concrete, goal-directed, and linear; her intellectual functioning was average; she was oriented on all spheres; she had good insight, judgment, and recent memory; and she did not report any hallucinations or delusions. AR 1323. But the mental status exam also notes limited eye contact; cooperative but restless behavior; flat observed affect; depressed reported mood; and only fair

remote memory, attention span, and concentration. *Id.* Plaintiff also reported passive suicidal ideation in the previous week. AR 1321.

Particularly with mental impairments, symptoms wax and wane, and therefore some normal findings, or the absence of abnormal findings for a short period of time, do not necessarily show a claimant is capable of full-time, regular work without substantial disturbances. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence [with mental health issues], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

The ALJ also noted Plaintiff "has been quite active maintaining a relationship, moving to different states successfully, and interacting with immediate family," remarking that "[s]uch evidence is not consistent with marked restrictions." AR 989. But the ALJ again provides no explanation for why these activities are inconsistent with Dr. Ruddell's opined marked limitations in Plaintiff's ability to adapt to changes in a routine work setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently.

In sum, the ALJ's reasons for discounting Dr. Ruddell's opined marked limitations were not supported by substantial evidence. This error was not harmless. Had the ALJ properly evaluated this evidence, the RFC may have included additional limitations, or the ultimate determination of disability may have changed. Accordingly, remand is appropriate.[3]

---

[3] Because the Court finds harmful error in the ALJ's consideration of Dr. Ruddell's opinions, the Court need not address the other challenged medical opinion evidence.

B. *Remedy*

Plaintiff argues the proper remedy for the ALJ's error is remand for an immediate award of benefits. Dkt. 10 at 15. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Under this "credit-as-true" test, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292; *Garrison*, 759 F.3d at 1020.

An ALJ's errors are relevant only to the extent they impact the underlying question of the Plaintiff's disability. *Strauss v. Comm'r of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* Therefore, even if the "credit-as-true" conditions are satisfied, a court should nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court concludes Plaintiff has not shown that the record is free from important and relevant conflicts or that no issues remain that must be resolved. Because there are outstanding

issues which must be resolved concerning Plaintiff's functional capabilities and her ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate.[4]

**IV. Conclusion**

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled beginning July 13, 2016. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 22nd day of January, 2025.

David W. Christel
United States Magistrate Judge

[4] Plaintiff further contends the ALJ failed to properly evaluate her testimony about the severity of her symptoms and that the step five findings are not supported by substantial evidence. Dkt. 10 at 1–2. As noted above, the Court concludes the ALJ committed harmful error in assessing the medical opinion evidence and remand for further proceedings is appropriate. Due to this error, the ALJ must re-evaluate all the medical evidence on remand. Because Plaintiff may be able to present new evidence and new testimony on remand and the ALJ's reconsideration of the medical evidence may impact the assessment of Plaintiff's testimony, the ALJ must also reconsider this evidence on remand.